IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

Stephen Denson, et al.,                )
                                       )
    Plaintiffs,                        )
                                       ) Case No. 17 CV 50180
  vs.                                  )
                                       )
Village of Johnsburg, et al.,          ) Judge Philip G. Reinhard
                                       )
    Defendants.                        )

## ORDER

For the reasons set forth below, defendants' motions for summary judgment [38], [40], are denied. Finding the claims in this case appropriate for settlement, the court orders the parties to contact Magistrate Judge Jensen within seven (7) days of the date of this order to schedule a settlement conference.

## STATEMENT - OPINION

This matter arises out of plaintiffs Stephen Denson's and Susan Flood's 42 U.S.C. § 1983 complaint [1] alleging they were subject to false arrest (Counts I and III), and malicious prosecution (Counts V and VI) by defendant Johnsburg police officers J. Ehlers and M. Vollmer. Plaintiff Denson further alleges he was subject to excessive force (Count II) by the defendant officers. Plaintiffs also bring claims of respondeat superior and indemnification against the Village of Johnsburg (Counts VII and VIII).[1]

On October 18, 2018, defendants filed motions for summary judgment on plaintiffs remaining claims under FED. R. CIV. P. 56 and Local Rule 56.1 [38], [40]. On December 10, 2018, plaintiffs filed responses in opposition [45], [46]. On December 24, 2018, defendants filed replies [48], [49]. This matter is now ripe for the court's review.

**A.    FACTUAL BACKGROUND**

On November 29, 2015, at around 1:30 a.m., plaintiff Stephen Denson was at Halftime

---

[1] Plaintiff Denson's claim of equal protection - class of one (Count IV) - was dismissed by this court on January 11, 2018 [26].

1

Bar & Grill in Johnsburg, when defendant Johnsburg police officers J. Ehlers and M. Vollmer pulled into the parking lot of the bar. The officers were there to obtain security camera footage regarding an incident that had happened at the bar earlier that night. When defendant Vollmer pulled into the parking lot in his squad car he recognized plaintiff Denson and spoke briefly to him through his squad car window as plaintiff Denson leaned on the car's window sill. Plaintiff Denson was intoxicated and appeared to defendant Vollmer to be agitated. Plaintiff Denson told defendant Vollmer he was "pissed" and slammed the inside door panel of defendant Vollmer's front passenger side door panel.

As defendant Ehlers was arriving in the parking lot and defendant Vollmer was moving his squad car to make room for him, plaintiff Denson threw an object in the direction of the squad cars. Defendants assert the object hit the bumper of defendant Ehlers' squad car; plaintiff disputes the object hit the car. This prompted the defendant officers to get out of their cars and approach plaintiff Denson and ask him what he had thrown. Plaintiff Denson did not answer the defendant officers' questions. Defendant Vollmer then directed plaintiff Denson to sit in the officer's squad car. Defendant Vollmer then viewed surveillance video which showed that plaintiff Denson threw an object at or in the direction of the squad cars. While defendant Vollmer was viewing the surveillance video, defendant Ehlers moved his squad car and discovered that the object thrown by plaintiff Denson was a cell phone. Defendant Ehlers issued plaintiff Denson a village citation for littering for throwing the cell phone.

At some point after plaintiff Denson threw the cell phone, plaintiff Flood arrived at the parking lot with plaintiff Denson's sister Jeanine Lundy and plaintiff Denson's friend Mario Casciaro. After being issued the littering citation, plaintiff Denson was free to go and walked over to Casciaro's car. While walking to Casciaro's car, plaintiff Denson tore up the littering citation and threw it on defendant Ehlers' squad car. Defendant Vollmer then ordered plaintiff Denson to get out of Casciaro's car and pick up the paper citation pieces. Plaintiff got out of the car and began picking up the citation pieces. In picking up the torn pieces off of defendant Ehlers' car, defendants claim plaintiff Denson brought his hand down forcefully on top of the car. Defendant Vollmer testified he heard the metal hood of the car pop in and out. Plaintiff Denson testified he did not slam his hand down on the car, he was merely reaching his hand over the hood of the car to pick up the paper citation pieces. The security camera video footage provided by the parties is difficult to discern. The video shows a person, presumed to be plaintiff, walking over to the hood of what appears to be a squad car, taking his left hand and arm and coming down on the hood and sweeping something away from the hood. The video shows plaintiff repeating this action twice. Defendants assert that after plaintiff Denson forcefully brought his hand down on defendant Ehlers' squad car, scattering the pieces of the paper citation, he walked away without picking up all of the pieces. Plaintiff Denson claims he was prevented from picking up all of the pieces, was told to stop and then was placed under arrest for (at least) criminal damage to property. While defendant officers Vollmer and Ehlers were placing handcuffs on plaintiff Denson during the arrest, plaintiff Denson rotated his body from facing the squad car. Plaintiff Denson then turned his head and made some remark to the defendant officers and the defendant officers shoved plaintiff Denson into the side of defendant Ehlers' squad car.

2

Defendants claim the side mirror was knocked out of place during plaintiff Denson's arrest. Plaintiff Denson claims he was shoved into the side mirror by the defendant officers. Defendants claim the side mirror became twisted out of place when plaintiff Denson was picking up the pieces of the citation and the officers believed at that point that the mirror had been damaged. The video fails to accurately show what happened to the side mirror and when. Plaintiff Denson was issued a second citation for littering as well as charged with criminal damage to property under Illinois law 730 ILCS 5/26-1.[2]

After plaintiff Denson was taken to the Johnsburg police department, defendant Vollmer began to take pictures of defendant Ehlers' squad car while the car was outside the sally port. While taking the pictures, plaintiff Flood arrived (with Lundy and Casciaro), walked up to the squad car and moved the side mirror back into its proper position. Defendant Vollmer believed plaintiff Flood moved the side mirror into its proper position in an effort to obstruct defendants' investigation and to help plaintiff Denson. Plaintiff Flood was then placed under arrest and charged with obstructing a police officer. Plaintiff Flood disputes she moved the side mirror back into its place to help plaintiff Denson as plaintiff Denson had been arrested for the alleged damage to the hood of defendant Ehlers' squad car. Defendant Vollmer turned over the criminal complaint against plaintiff Flood for obstructing a police officer to the McHenry County State's Attorney. Plaintiff Flood was acquitted after trial of this offense. All three charges against plaintiff Denson were nolle prossed by the state.

**B.    LEGAL STANDARD**

On summary judgment, the court construes all facts and draws all inferences in the light most favorable to the non-moving party. *Schepers v. Commissioner, Indiana Dept. of Corrections,* 691 F.3d 909, 913 (7th Cir. 2012). The court does not weigh evidence or determine the credibility of witness testimony. *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 630 (7th Cir. 2011). Instead, the court only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" supported by citations to materials in the record, including, among other things, depositions, documents, and affidavits. FED. R. CIV. P. 56(a). That said, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating the parties' Local Rule 56.1 statement of material fact and responses, the court is cognizant of its obligation to construe all disputed and undisputed facts in the light most favorable to the plaintiff. *See Schepers*, 691 F.3d at 913.

---

[2] Plaintiff Denson failed to appear at the hearing for the two littering citations so the citations were converted to littering citations under Illinois statute 415 ILCS 105/4. The defendant officers turned over the criminal complaint for criminal damage to property to the McHenry County State's Attorney.

## C. ANALYSIS

### 1. Plaintiff Denson's claim for false arrest against defendants Ehlers and Vollmer - Count I

Defendants Vollmer and Ehlers first argue their arrest of plaintiff Denson was lawful. "[T]he presence of probable cause makes a warrantless arrest reasonable under the Fourth Amendment." *Hurem v. Tavares*, 793 F.3d 742, 745 (7th Cir. 2015) (citing *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014)). Probable cause, therefore, is an "absolute defense" to a claim for false arrest brought under 42 U.S.C. § 1983. *Id*. Moreover, "[t]he existence of probable cause to arrest a suspect for any offense, even one that was not identified by the officers on the scene or in the charging documents, will defeat a Fourth Amendment false-arrest claim." *Sroga v. Weiglen*, 649 F.3d 604, 608 (7th Cir. 2011). To make the determination whether probable cause existed at the time of arrest, the court must "step into the shoes of a reasonable person in the position of the officer, considering the facts known to the officer at the time." *Williams v. City of Chicago*, 733 F.3d 749, 756 (7th Cir. 2013) (citations and quotations omitted). "In deciding this question of law as part of a motion for summary judgment, however, [the court] must give the non-moving party the benefit of conflicts in the evidence." *Id*.

The parties agree plaintiff Denson was placed under arrest for his actions in the parking lot of the bar. He was charged with criminal damage to property under Illinois law 720 ILCS 5/21-1 and received two citations for littering under the Village of Johnsburg Municipal Code. First, as to the charge of criminal damage to property, defendants argue probable cause existed to support this charge, while plaintiff Denson argues it did not. Defendants rely on *Beiles v. City of Chicago*, 987 F. Supp. 2d 830 (7th Cir. 2013), in support of their argument. In *Beiles*, the court found that the defendant officer had probable cause to arrest plaintiff after finding the "knowing" element of criminal damage to property satisfied. Beiles' complaint made clear that he intentionally struck the defendant's vehicle. "Probable cause is present if, at the time of the arrest, the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Id*. at 835 (citation omitted). Here, plaintiff Denson does not admit he intentionally struck defendant Ehlers' squad car. In fact, a dispute exists as to whether he "struck" the car at all. Despite each parties' assertions that the video evidence clears up this dispute, such is not the case. The video shows (a person identified in the briefs as) plaintiff Denson reaching his arm across what appears to be a car and making a sweeping motion. The court cannot agree with defendants and find that this action represented a "slam" on the hood of the car. Further, the court acknowledges that plaintiff Denson disputes he slammed his hand on the hood. Neither can the court agree with plaintiff Denson and find that

he did *not* bring his hand down forcefully enough to be considered a "slam."³ In a review of all the evidence and arguments, the court cannot determine, in a light most favorable to plaintiff Denson, if defendants were reasonable in their belief that plaintiff Denson committed the offense of criminal damage to property. Regarding plaintiff Denson's claim for false arrest as to the criminal damage to property charge, the facts are in dispute.

Second, the court reviews whether the facts are sufficient to support the defendant officers' arrest (or potential arrest) of plaintiff Denson for littering. As noted above, plaintiff Denson was cited twice for littering during the course of events that make up his complaint. The court agrees with defendants that an arrest is valid "if probable cause to make an arrest for any crime existed at the time of the arrest." *Swanigan v. Trotter*, 645 F.Supp.2d 656, 674 (N.D. Ill. Aug. 4, 2009). And that "[w]hen an officer has probable cause to believe that an individual has committed even a very minor offense, he may arrest the offender." *Id*. citing *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Plaintiff Denson was first cited for littering when he threw his cell phone at or near defendants' parked squad cars. Regarding the offense of littering, the Village of Johnsburg Municipal Code states: "It shall be unlawful for any person to deposit, place or locate garbage or other similar refuse or recyclable materials in any manner so that the same could be blown about or scattered by wind or accessible to animals." 17.09(C). The court agrees with plaintiff Denson that it would be a "stretch" to label plaintiff Denson's toss of his cell phone at the squad cars as "littering" under the Village's code. Additionally, the facts are not in dispute that plaintiff Denson was immediately detained following his actions, preventing him from picking up his cell phone. While the court analyzes the actions of the defendants from the "perspective of a reasonable officer at the scene," *Weinmann v McClone*, 787 F.3d 444, 448-49 (7th Cir. 2015), the facts here "fall short" of probable cause to believe plaintiff committed the offense of littering. *Id*. Plaintiff Denson's second citation for littering came as a result of plaintiff Denson ripping up the first citation and throwing it on the hood of defendant Ehlers' squad car. Defendants argue plaintiff Denson failed to pick up all the pieces of the citation, thus intending to litter. Plaintiff Denson testified he was complying with the order to pick up the pieces of paper when the defendant officers failed to give him a chance to finish and placed him under arrest. The video evidence shows (the person purported to be) plaintiff tossing something which appears to be paper across the hood of a car and then walking over to the hood and making a sweeping-type gesture. While plaintiff Denson does appear to walk away without completing the job of picking up the paper, without the benefit of audio it is impossible to know what the defendants may have said to plaintiff Denson which caused him to step away from the hood of the car. While this may be a closer call (in light of the language contained in the littering statute), the court finds there is a dispute of a material fact foreclosing summary judgment.

---

³ Defendants state in their brief that plaintiff "intentionally struck Officer Ehlers' squad car." This is clearly denied by plaintiff in his deposition testimony.

5

As to plaintiff Denson's claim for false arrest, defendants have failed to show there is no genuine dispute as to the material facts that make up the claim. Therefore, their motion for summary judgment as to false arrest is denied.

### 2. Plaintiff Denson's claim for malicious prosecution against defendants Ehlers and Vollmer - Count VI

"To establish a claim for malicious prosecution under Illinois law, plaintiff[] must establish five elements: (1) commencement or continuation of an original proceeding; (2) termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages." *Cairel v. Alderden*, 821 F.3d 823, 834 (7th Cir. 2016). Defendants may prevail on summary judgment on a malicious prosecution claim if they can demonstrate that "no reasonable jury could find an absence of probable cause to initiate the charges." *Id*.

The court has found above that a genuine dispute of material facts exists regarding whether the defendant officers had probable cause to arrest plaintiff Denson for any crime. While false arrest, as pleaded by plaintiff Denson, sounds in federal constitutional law, and malicious prosecution is a state tort, the absence of probable cause defeats summary judgment for both. *See Coleman v. City of Peoria, Illinois,* __ F.3d __, 20129 WL 2240575 at *11 (7th Cir. 2019). Thus, defendants' motion for summary judgment as to plaintiff Denson's claim for malicious prosecution is denied.

### 3. Plaintiff Denson's claim for excessive force against defendants Ehlers and Vollmer - Count II

Defendants Ehlers and Vollmer contend they did not use excessive force in arresting plaintiff and, therefore, are entitled to judgment as a matter of law.

The force used to effect an arrest must be objectively reasonable under the Fourth Amendment. *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005). To determine whether the force was reasonable, the court must "engage in a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Chelios v. Heavener*, 520 F.3d 678, 689 (7th Cir. 2008) (citations and quotations omitted). The court must pay careful attention "to the facts and circumstances of [the] case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.

Defendants argue the security camera footage "definitively shows" that the defendant officers "used very little force" in the arrest of plaintiff Denson. Plaintiff Denson claims the defendant officers "violently shoved" him into the side of squad car and struck him in the chest during the course of the arrest. This dispute over these material facts cannot be resolved by the court through its review of the testimony and evidence, including the video footage. The footage

shows what appears to be the arrest of plaintiff Denson, yet the action is at a distance and the view blocked by other cars and trees. The court finds the footage is not "definitive." Because the court cannot resolve the factual disputes that control whether or not there can be a finding that the defendant officers did or did not use excessive force in the course of their arrest of plaintiff Denson, defendants' argument that plaintiff Denson's claim for excessive force should fail cannot be resolved at this stage in the litigation.

### 4. Plaintiff Flood's claim for false arrest against defendant Vollmer - Count III

Defendant Vollmer argues his arrest of plaintiff Flood for obstructing a police officer was constitutional. Plaintiff Flood argues defendant Vollmer lacked probable cause to place her under arrest.

While defendant Vollmer was taking pictures of defendant Ehlers' squad car at the police station, plaintiff Flood arrived (with plaintiff Denson's sister Lundy and plaintiffs' friend Casciaro). The side mirror on the squad car was out of place (which had occurred at some point when the parties were in the parking lot of the bar) and plaintiff Flood walked up to it and put it back into place. Defendant Vollmer believed plaintiff Flood did this in an effort to help plaintiff Denson and hinder his (defendant Vollmer's) investigation of crimes plaintiff Denson may have committed. Plaintiff Flood admitted she moved the mirror back into its proper position, but denied she did it to help plaintiff Denson or to obstruct defendant Vollmer's investigation. Plaintiff testified she did not remember defendant Vollmer telling her not to go near the squad car, nor did she believe that defendant Vollmer told her not to touch the squad car. Defendant Vollmer testified he was able to take a photograph of the hood and side mirror of the squad car before plaintiff Flood put the mirror back into place.

As noted above, probable cause to arrest is an "absolute defense" to a false arrest claim. *Hurem,* 793 F.3d at 745. "Probable cause exists where the police officer is aware of facts and circumstances sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Coleman*, 2019 WL 2240575 at *11. Here, like with plaintiff Denson's false arrest claim, the parties dispute the facts. Defendant Vollmer argues plaintiff Flood failed to comply with his orders to stay away from the car, and plaintiff Flood testified she twisted the side mirror back into place before defendant Vollmer said anything to her. In Illinois, a person commits the offense of resisting or obstructing a peace officer who "knowingly resists or obstructs the performance by one known to the person to be a peace officer." 720 ILCS 5/31-1(a). Accepting the facts in the light most favorable to plaintiff Flood, the court finds there is a genuine dispute of material facts regarding plaintiff Flood's arrest, such that defendant Vollmer's motion for summary judgment on this issue must be denied.

7

5. **Plaintiff Flood's claim for malicious prosecution against defendant Vollmer - Count V**

Because the court finds that there is a dispute of fact regarding whether defendant Vollmer had probable cause to arrest plaintiff Flood, defendant Vollmer's motion for summary judgment as to plaintiff Flood's claim for malicious prosecution likewise fails. *See* section C 2 above.

6. **Plaintiffs' state law *respondeat superior* and indemnification claims - Counts VII and VIII**

Plaintiffs' state law claims for *respondeat superior* and indemnification survive at this stage of the litigation.

### D. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [38], [40], are denied. Finding the claims in this case appropriate for settlement, the court orders the parties to contact Magistrate Judge Jensen within seven (7) days of the date of this order to schedule a settlement conference.

Date: 06/07/2019          ENTER:

*Philip G. Reinhard*
United States District Court Judge

Electronic Notices. (LC)